APPENDIX A:  COMPLAINT AND REQUEST FOR INJUNCTION
JERRY WALKER VS. American Red Cross & Related Entities, Organizations, and Individuals

October 9, 2020

# SUMMARY

This report provides a timeline of interactions between myself and various representatives of the American Red Cross during my stay as an Oregon wildfire evacuee at Holiday Inn Express at 2117 Franklin Boulevard in Eugene Oregon.  On September 08, Springfield Police took me from the fire station in Vida to the designated evacuation point at Thurston High School following fires near the Goodpasture Bridge.  Throughout this event I have experienced civil and human right violations by representatives of the American Red Cross, and possibly related entities, organizations, and individuals.  As such, I am filing a complaint in and requesting injunctive relief.

# TIMELINE

| September 08 | Check-in at the American Red Cross evacuee location at Thurston High School in Springfield, Oregon.  The time was approximately 8:30 AM or 9:00 AM.  A.R.C. representatives were checking in evacuees and securing hotel rooms for everyone. |
|---|---|
| September 08 | Odd occurrence:  I returned in line around noon to ask about the status of my hotel room.  We had arrived early and was told it might be late into the evening before one was secured.  There was a man with white/grey hair in his older 40s or early-to-mid 50s who was waiting in line, and tried to strike up a conversation with me.  He looked to have just arrived at the evacuee site and claimed to have jumped in the McKenzie river in order to save his own life due to the fire.  He had a bandage on his leg (right leg, if I remember correctly). |
| | He asked me what the line was for.  I mentioned that the American Red Cross was getting hotel rooms for everyone.  He suggested that maybe he and I should get a room together, and when he sat down in front of the A.R.C. representative, he verbally referenced me and motioned as though we were together.  The A.R.C. representative, Paul, looked at me and appeared to be seeking confirmation regarding my association with the man.  I shook my head, "no."  I did not speak to him again.  Afterward, I waited my turn in line, and an A.R.C. representative provided with the hotel and an informational sheet. |
| September 08 | Check-in at Holiday Inn Express (H.I.E.) in Room 407 following the evacuation, early-to-mid afternoon. |
| September 12 | Spoke with Diana, A.R.C. Representative onsite at the hotel. (541) 214-4999.  I asked her about duration of stay.  She said, "You can stay as long as needed." |

**APPENDIX A: COMPLAINT AND REQUEST FOR INJUNCTION**
JERRY WALKER VS. American Red Cross & Related Entities, Organizations, and Individuals

| September 13 | Another evacuee (Robbie) mentioned in the lobby at breakfast time that he had a room until Thursday. |
|---|---|
| September 16 | Notification with less than 24 hours of required check out of the hotel on the following day. Notified of additional shelter available at Churchill High School. |
| September 16 | I spoke with A.R.C. Representative named Ken and asked if everyone (all evacuees) were required to leave the hotel, or only certain ones. He initially said that he didn't know. I went to discuss with the front desk to ask the same question. |
| September 16 | Asked front desk if all evacuees were required to leave the hotel, or if only specific people were being asked to shelter elsewhere. The representative, Emily, indicated that the hotel's rooms were already pre-booked for the OU Dorm Move In. She confirmed that it was in fact everyone that was being asked to check out. |
| September 16 | Ken approached me and said that there were some individuals with disabilities that were being relocated to another hotel. He characterized their conditions (wheelchairs, etc.). I informed him that I have a disability that is covered by the Americans with Disabilities Act (ADA), which extends protection to individuals with my disability and applies to organizations such as the American Red Cross. He said that he would take my name for relocation to a different hotel rather than the emergency shelter at Churchill High School. I provided my name and telephone number. He said that it would be tomorrow before I heard from them. |
| September 16 | In the meantime, I spoke with Emily at the front desk. She confirmed that all A.R.C. evacuees were required to leave the hotel to find different shelter due to pre-booked rooms for campus-move-ins at the University. (University of Oregon). She also provided contact information for the Holiday Inn Express at Springfield, indicating that she spoke with their manager and that the Springfield location had 90 rooms available. I provided this information to one of the ladies at the A.R.C. control/operations room in the lobby, indicating that if they needed to find available rooms that H.I.E. Springfield might be an option, according to Emily from the front desk here at H.I.E. Eugene. |
| September 16 | During this time, Ken approached me again and said, "The Red Cross is not going to be able to help you." I asked why, and he said that they wouldn't help with a hotel rather than the High School Shelter because my condition wasn't severe enough. I asked for clarification, and he said that when they refer to disabled, they are looking mainly at individuals with mobility issues or severe conditions. I let him know that I had a severely compromised immune system, and he sympathized with me. I then asked |

**APPENDIX A: COMPLAINT AND REQUEST FOR INJUNCTION**
JERRY WALKER VS. American Red Cross & Related Entities, Organizations, and Individuals

| | |
|---|---|
| | if I could speak with a supervisor, and he said he would get someone. I waited for about 30 minutes. |
| **September 16** | Eventually, I was able to speak with the same husband and wife who signed me up for a hotel at the Thurston location. The man's name is Paul, and I forgot the lady's name. They reiterated the policy of placing only those with the most severe medical conditions in hotels, and I reiterated that my condition is severe. The wife (blond hair) said "The fact that you're standing here talking to me means that your condition isn't severe." I told her that she was incorrect, and that my condition is severe--adding that it consisted of a disability protected by the ADA, and that I was going through disability determination with Social Security Administration. I expressed concern later by stating that when I was in my tent before the disaster I wasn't as concerned for issues with my compromised immune system, and that being in my own room in a hotel was similar. Staying at the shelter at the High School with others in cots placed 6 feet apart may increase complications. He added, "Well you were living in a tent; if we could get you a tent you could go back to camping." I responded that he was correct; except for the fact that all areas where free camping was permitted were now burned or inaccessible. NOTE: Eugene has strict laws about "camping/homelessness." |
| | Paul and his wife (the lady with the blond hair) continued to let me know that they would place me on a list for possible hotel placement, but that going to the High School at Churchill would be best for maintaining contact with the American Red Cross. I asked Paul about the list, and he took my name, just as Ken took my name and number, but I have not seen the "list" I was placed on. They indicated that someone would contact me on 09/17/2020.<br><br>Paul mentioned as well that before all of the "COVID-19 stuff," and that A.R.C. would have been able to place people in cots and feed them; "Three hots and a cot" was the phrase he used. He walked me through what A.R.C. typically does, and also how they would maintain communication with me throughout the process. |
| **September 16** | Call to American Red Cross, National Headquarters (800) 307-5842 requesting additional information. Spoke with Dawn on the evening of 09-16-2020 and went through the issue with her. She said that she had entered the information into the computer, and that someone would contact me before noon on 09-17-2020. |
| **September 16** | Spoke with another evacuee named Jeff Wright in the hallway of the 4th floor; exchanged information. He said that he lived in the McKenzie River Bridge area. Suggested that we exchange information in the event |

**APPENDIX A: COMPLAINT AND REQUEST FOR INJUNCTION**
JERRY WALKER VS. American Red Cross & Related Entities, Organizations, and Individuals

|  | |
|---|---|
|  | that we need to contact someone. I called his number at (971) 261-8687 and saved his number to my phone. |
| **September 16** | Late in the evening, I called the telephone number for Diana (541) 214-4999, A.R.C. Representative. This telephone number was posted without a name on the wall for evacuees at the H.I.E. lobby in front of the elevators. It was when I called it that I realized it was the same number attributed to Diana. A man named "Bob" answered, and I asked if I had called the American Red Cross. I told him that I had that telephone number listed for "Diana." He told me that several people have been using that phone, and that he was a representative with the A.R.C. I reviewed my situation with him, and asked if there was anything I could do to help in the process since I was waiting for more information from A.R.C. National Headquarters, and their onsite team. Bob indicated that they had been blindsided by the announcement that evacuees would be required to leave, stating afterward that they were expecting for the rooms to be extended, but they were not going to do so (He spoke of the extension being authorized by either the A.R.C. or by the Federal Government; I am not sure which.). |
| **September 17** | Called American Red Cross, National Headquarters back at 6:18 AM PST on 09-17-2020; spoke with Kimberly. I reviewed the issue with her; she is now checking to see. Taking my contact information and logging the call. Asked Kimberly if the fact that I was homeless prior to the disaster excluded me from the same care/treatment as the other evacuees--she said no. Doesn't know when someone will contact me back. May or may not be before noon. They do get in touch with people as soon as they can. Due to the large call volume, cannot guarantee a timeframe for call back.<br><br>Asking whether or not my previous call was even logged. Wondering whether they are able to find my record and follow up.<br><br>I asked whether her call center was owned by the American Red Cross. She said they were "With the American Red Cross." To clarify, I asked if her paycheck said "American Red Cross" at the top of it, or if it was a different organization. She didn't respond. I asked if their call center provided service to other organizations besides the A.R.C., and she said that she didn't know if she could answer that. Said that they were with the A.R.C. Said that she was trying to get in touch with a supervisor. I asked if her call center was owned by the Red Cross; she said, "I am going to try to get a supervisor, can you hold on?" I am not sure that A.R.C. ever received my request from yesterday. Kimberly now recommending that I contact the people back and let them know that I have health issues which prohibit me from staying in a public shelter. |

**APPENDIX A: COMPLAINT AND REQUEST FOR INJUNCTION**
JERRY WALKER VS. American Red Cross & Related Entities, Organizations, and Individuals

|  |  |
|---|---|
|  | She provided the Local Red Cross Number: 97403 ZIP--Local Red Cross<br><br>503-284-1234<br><br>Ticket Number for this call (Asking for ticket #; asked to wait for just a minute):<br><br>She said that she logged out too fast and doesn't have a reference number. She said that if I call back then there will be a reference number.<br><br>She said that if I call back, they will be able to look up information by my name and phone number. |
| **September 17** | Went downstairs for breakfast at 8:18 AM and was notified via flyer and orally by A.R.C. Representative that evacuees do not have to check out of the hotel; H.I.E. working with A.R.C. to extend contract until October 3. |
| **September 17** | Spoke with A.R.C. representative in the lobby, Paul, who was informing evacuees that the rooms had been extended. |
| **September 17** | Received a robocall from phone number (541) 337-6074 suggesting that I was involved with *Social Security Fraud* and *Money Laundering*. I contacted my attorney who is processing my SSA Claim, and the paralegal, Ashley, said that the call was a scam call. She said that she would report it. |
| **September 22** | Received a second robocall from phone number (541) 337-3762 suggesting that I was involved with *Social Security Fraud* and *Money Laundering*. I contacted the paralegal Ashley at my SSA attorney's office again to report the incident. I asked her if I should contact the number just in case, and she said that it was a scam call, and that unfortunately people receive those kinds of calls. |
| **September 28** | Wrote and hand-delivered a one-page letter to the A.R.C. onsite operations team inquiring about extension of my hotel room, or the possibility of staying in a different hotel. The letter was hand-delivered to Mary with the A.R.C. team.<br><br>No response was received. |
| **September 30** | Spoke with Mary at breakfast time in the morning and asked if she had the chance to read my letter. She at first stated that I didn't give her a letter, then recalled that I in fact I had done so, and asked for me to remind her |

**APPENDIX A: COMPLAINT AND REQUEST FOR INJUNCTION**
JERRY WALKER VS. American Red Cross & Related Entities, Organizations, and Individuals

|  | |
|---|---|
| | about its content. I told her that it was regarding the extension of my room, and she said that a case-worker would be contacting me about next steps. My impression was that my concerns were being dismissed, and that I was being placated. |
| September 30 | I wrote and hand-delivered a follow-up letter which included basic information about the American's with Disabilities Act of 1990, and provided referenced information to laws and statues which prohibit the disparate treatment of individuals with recognized disabilities. The letter was four-pages long, and reiterated my request for continual housing in my current hotel room, or another comparable hotel room. I hand delivered the letter to Julia Bishop, A.R.C. Representative who was standing next to the front desk. |
| September 30 | I returned to my room and attempted to contact A.R.C.'s local number that I looked up online, which is (541) 344-5244. An operator eventually answered, and I briefly restated my situation; asking for an email address where I could send attachments. The operator transferred me to a different location: Recording said, "59734009 is not available"... then "beep" followed by a disconnection. |
| September 30 | I went downstairs to the A.R.C. onsite operations team, and asked if they had received the letter that I provided to Julia Bishop. I spoke with Phyllis, who asked for clarification on what I needed. I briefly explained my situation, directed her attention to the Oct. 3 date to which the hotel room had been booked, and asked if there was an email address where I could contact someone and attach copies of the letters that I had previously hand-delivered. She let me know that there wasn't an email address that I could contact. I asked if I could speak with the director, or the supervisor, or at least have their contact information. She asked why. I responded that I would like to get confirmation that my hand-delivered letters were in fact received, and that I would like to be able to show that I had spoken with a supervisor or the director. She said that there wasn't anything they could provide me, but that she would let the supervisor know that I had a concern. |
| September 30 | After I left the onsite operations room, I met the supervisor, Sharon, in the hallway. I discussed my situation with her. She asked me, "Who is telling you that you have to leave?" I directed her to the sign posted in front of the operations room stating that the hotel was working with the A.R.C. to extend the rooms until October 3. She said, "That just needs to be taken down." She removed the sign and wadded it up in her hands. She said, you do not have to leave. taken down, and that I do not have to leave. She commented that she had the Disability Integration department getting calls from people. I mentioned that I had not contacted them directly, but that I had been in contact with the local operations team regarding concerns that I had. I added that if I had an issue, I prefer to |

**APPENDIX A: COMPLAINT AND REQUEST FOR INJUNCTION**
JERRY WALKER VS. American Red Cross & Related Entities, Organizations, and Individuals

|  | address it directly. She said that they would contact me regarding what's next for recovery. I asked her what the "Recovery Phase" meant, and she said, "Recovery is whatever that means for you." |
|---|---|
| **September 30** | Tracy from the American Red Cross called from telephone number (510) 712-3796 and left a voicemail confirming that my room is not being cancelled. I called her back and let her know that Sharon had discussed the same with me, and thanked her for her voicemail. |
| **October 03** *(NOTE: this is the date mentioned on the flyer regarding an extension date for hotel rooms.)* | Met with Mary in the lobby at lunch time. She took a moment to complete a case-work intake form with me. She inquired as to where I was living before the disaster, and what my plans were when "this is all over." I told her that I am currently going through Disability Determination with the Social Security Administration, and the in the future I would likely return to graduate school since that was what I was doing all of 2019. |
| **October 03** *(NOTE: this is the date mentioned on the flyer regarding an extension date for hotel rooms.)* | Mary, A.R.C. representative asked me if she could have another copy of the letters that I had hand-delivered to the A.R.C. onsite operations team on 09/28 and 09/30. I printed out copies and provided them for her. Later that day. I provided the onsite operations team with my email address. I also provided a letter from my physician confirming that I have a condition covered by the ADA. |
| **September 09** | Received a telephone call from A.R.C. Representative "Adrian" in the afternoon, calling from telephone number (503) 902-1130. She said that she was calling from Connecticut, but had been issued an Oregon number. I discussed the entire situation with her, and she expressed concern regarding the issues surrounding my discussion with A.R.C. Representatives on 09/16 with respect to my disability, the ADA, and the ability to remain sheltered in a hotel. She also asked about next steps, and I explained my situation to her. She at one point suggested that maybe A.R.C. could just "get me a tent" and I could go back to camping. |

**EFFORTS TO IMPEDE COMMUNICATIONS**

In my interactions with the American Red Cross representatives, there seems to be a concerted effort to prohibit me from communicating directly with A.R.C. personnel and/or representatives via email. I believe this to be a deliberate. Despite several requests, it was only on the afternoon of 09/09/2020 that I was provided with an email address by A.R.C. representative, Adrian. She indicated that the email address goes to the *American Red Cross' Disability Integration* team. The address provided is: dr568-21di@redcross.org. She added that the addressee portion is the identifier used for this particular disaster. As of the morning of 10/12/2020, I have not yet sent an email to the address for verification or communication purposes.

**APPENDIX A: COMPLAINT AND REQUEST FOR INJUNCTION**
JERRY WALKER VS. American Red Cross & Related Entities, Organizations, and Individuals

Following my cellular phone interaction with Adrian on the afternoon of 10/09/2020, I began the process of filing an ADA complaint with the Department of Health and Human Services, which is located on 7th Avenue in Eugene Oregon. To do so, I prepared to reprint copies of documentation that I had hand-delivered to A.R.C. representatives onsite at the hotel, and accessed HHS.gov on my computer to read information about filing a complaint in writing.

Attempts to dial the Department of Health and Human Services' telephone number were blocked on my cellular phone, with a recorded message stating, "Your call can not be completed at this time." Therefore, I was required to use the hotel telephone. There were no issues making outbound calls with my cellular phone other than when I tried to contact HHS; I verified and the number I had dialed was correct. I believe this block to be due to malicious efforts by a third party.

A few minutes before 5:00 PM PST, I dialed the main telephone number at Lane County Public Health, which is located in the Department of Health & Human Services. A lady answered, and I told her that I needed to speak with someone about the possibility of filing a complaint before the close of business. I also mentioned that I wanted to do so in writing rather than online, due to concerns related to privacy. I asked for a fax number where I could send written documentation. She said that there wasn't one where she was, but suggested that maybe there was one for the Communicable Diseases Department. It sounded odd to me, because my disability is considered a communicable disease, so it felt as if the person I was speaking with somehow had pre-existing knowledge of my medical condition. I told her that I would send the fax to them, and she provided me with the telephone number of "Joselyn Warren," Public Health Administrator. Before hanging up, I asked her name. She responded, "Jan Skie."

I spoke with Alyssa, an employee of Holiday Inn Express at the front desk of the hotel. She offered to fax the documentation for me. I provided her with the documentation to fax, and also left a hand-delivered courtesy copy for the front desk since the issues in my claim have transpired at the hotel. She said that she did try to send the fax, but was unsure whether or not it went through. She added that she would leave the fax for the crew coming in the next day, because they had more experience with the fax machine.

**PRIOR LIVING SITUATION**

At the beginning of most interactions related to "next steps," there seems to be a recurring effort to call my living situation prior to the disaster into focus. At the time of the disaster, I was living in a tent in various locations in and near the Willamette National Forest and surrounding areas. When the fire occurred, I was living at the *Bureau of Land Management Stockpile N° 09-89*. Camping is free on various Bureau of Land Management areas, which is necessary for me due to my current homelessness. I am not employed, and am experiencing several serious health issues. As such, I began the process of Disability Determination, where an individual's medical conditions and day-to-day routines are evaluated by the Social Security Administration in order to qualify for SSDI/SSI—otherwise known as *disability benefits*. The application was submitted during the month of May. I am currently going through the process of submitting additional documentation regarding health-related developments, such as medical visits and reports, labs,

**APPENDIX A: COMPLAINT AND REQUEST FOR INJUNCTION**
JERRY WALKER VS. American Red Cross & Related Entities, Organizations, and Individuals

etc. This is an ongoing process, and my medical status and conditions are in a state of constant change. Although the process is underway, there is no certain date when an approval will be reached, and my attorney's office advised me at the beginning of discussions that it can take up to two years.

## ALTERNATE HOUSING

*Community Supported Shelters:* When I was camping, I had already been on a waiting list for Community Supported Shelters, an organization in the City of Eugene which provides Conestoga Huts to homeless and low-income individuals in the area. The huts resemble a small, covered wagon, and are physically similar to a prefabricated tool shed that one would have in a backyard. The huts do provide shelter from rain, sleet, and snow, but I do not think that they provide protection from extreme heat and cold. It can take several months before a hut becomes available, and the site coordinator told me last week that I was nearing the top of the list. Still, it is uncertain exactly when a hut will become available. I do not know what the experience of living at Community Supported Shelters will be like.

*Eugene Mission:* From the end of January until July 11, I stayed at the Eugene Mission Wellness Center for the Homeless. During my stay at the mission, I experienced several kindnesses from individuals and staff, but also experienced extreme instances of civil and human rights abuses. My safety and well-being were placed at risk on a number of occasions while staying there, and situations are often orchestrated which ostracize and defame individuals who do not subscribe to their institutional written and unspoken dogma. I provided them with a letter via email which articulated some of my concerns prior to my departure. I received no written or verbal response. Still, a number of individuals I met at the Mission have interacted with me following my departure by lying in wait, posing at places where they know I will be, etc.

*Shelter Care:* I contacted Shelter Care when first arriving to Eugene in January 2020, and again sometime in May or June 2020. I received no follow up in January, and when I called in May or June, I received a voicemail stating that they were no longer accepting new residents.

*Section 8 Housing:* I completed an application for Section 8 housing through St. Vincent de Paul, but never received a response. Even if a response were received, I would not be able to afford such housing, as I cannot work and have no income. Section 8 housing is reduced rent, but not rent-free.

*Friends, Family, or Acquaintances:* I do not know anyone in Oregon, and have no family or friends in the area. I ended my relationships in my home state of Texas. Eugene is my home now.

*Dormitories:* Although I lived in the dorms while enrolled in graduate school last year, I am not currently enrolled in school here in Eugene. Finishing graduate school is what I want to do, but my life circumstances are such that it is not practical right now given my recent health issues and the uncertainty in attendance factors (in-person courses versus virtual, transferable hours, school choice, safety, etc.). I still have about 27 hours left to complete before receiving my master's degree.

**APPENDIX A: COMPLAINT AND REQUEST FOR INJUNCTION**
JERRY WALKER VS. American Red Cross & Related Entities, Organizations, and Individuals

*"Camping":* The term "camping" is often used to describe impromptu or transient campsites set up by homeless people. Camping is not permitted within the cities of Eugene or Springfield except in very specific circumstances, and only in areas with access to group showers and other facilities. The camp sites available in the surrounding forest areas have been affected by the wildfires, and are no longer a possibility. My conditions are prohibitive to constant city-to-city "camping" and relocation. My medical services are located in Eugene/Springfield, and require nearby transit. Therefore, "camping" is not an option.

*Other Temporary Housing Options:* There is one other shelter managed by St. Vincent de Paul on Highway 99, but I fear for my safety staying there. Programs exist for "rapid rehousing" and "supportive living" through HUD and other resources, but I do not feel comfortable participating in such programs, and am not required by law to do so. Some limited housing options are also available for persons struggling with addiction, historical incarceration, or other types of treatment-based issues with which I do not have a problem. Aside from Community Supported Shelters, there are no other short-or-long-term no-cost housing solutions where I can stay pending approval of my disability claim with the Social Security Administration.

**CONTINUED HOUSING/SHELTER THROUGH THE AMERICAN RED CROSS**

My current housing with the American Red Cross has been amazingly helpful and very much appreciated. Some of my health issues have been exacerbated by homelessness, and living in a tent in the middle of the forest created additional physical and sociological hardships that made life doable, but quite difficult. It is odd to say that as the result of such a disaster, my current living situation was much improved. Although I cannot say with certainty when my SSA Disability claim will be approved, I would prefer to stay in my current hotel room or in a comparable hotel room as long as possible rather than moving to one of the Conestoga Huts provided by Community Supported Shelters, where my quality of life will be negatively impacted. Therefore, from a health, safety, and well-being standpoint, the hotel room provided by the American Red Cross is favorable. I only feel safe residing in non-religious lodgings that have a comprehensive nondiscrimination policy in place, inclusive of considerations for class, disability, and sexual orientation (sex). Also, and for my own safety, I prefer that housing where I reside respect the privacy and autonomy of its residents, including a comprehensive non-invasion policy which prohibits acts such as "hacking" or harassment by telecommunication or other means.

DATE:       10/12/2020

SIGNED:     _____
            Jerry L. Walker, Plaintiff